## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MINNIE DIANE COX, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>DISPLAYMAX, INC., and FIXTUREMAX, INC.,<br><br>               Defendants. | Case No.:<br><br>COLLECTIVE ACTION<br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Minnie Diane Cox ("Plaintiff"), through her undersigned counsel, individually and on behalf of all persons similarly situated, files this Collective Action Complaint against Defendants DisplayMax, Inc. ("DisplayMax") and FixtureMax, Inc. ("FixtureMax") (together, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

1.    Defendants operate a nationwide retail support company that provides its customers with merchandising, fixture and display installations, store remodel, and retail construction services to a variety of retailers nationwide. Defendants

operate as one entity and jointly employ individuals, such as Plaintiff and those similarly situated, in non-exempt positions to travel to retailers and set up store displays and shelving for large scale retail installations.

2.  This case is about Defendants' failure to pay their non-exempt employees all the wages to which they are entitled, including regular and overtime wages. As described in further detail below, Defendants utilized an unlawful day-rate pay scheme and failed to properly pay their employees overtime at a rate of time and one half (1 ½) times their regular rate for all hours worked in excess of forty (40) hours in a workweek as required under the FLSA.

3.  Additionally, this case is about Defendants failure to pay correct overtime premiums by virtue of their decision to exclude certain forms of compensation, including per diem payments, when calculating overtime wages due.

## JURISDICTION AND VENUE

4.  The exercise of jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants maintain their principal place of business in this District and conduct a substantial portion of their business activities in this District.

## PARTIES

6.  Plaintiff is an adult resident of Lakeland, Florida. Plaintiff worked for

Defendants as an Installer from August 26, 2022 until May 31, 2024. Plaintiff's written consent to be a plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

7.      Defendant DisplayMax, Inc. ("DisplayMax") is a Michigan for-profit corporation with its corporate headquarters at 327 Catrell Dr. Howell, Michigan 48843-1703.

8.      Defendant FixtureMax, Inc. ("FixtureMax") is a Michigan for-profit corporation with its corporate headquarters located at 327 Catrell Dr. Howell, Michigan 48843-1703.

9.      Defendants and/or Defendants' officers, directors, agents, employees, or representatives committed the unlawful acts alleged in this Complaint while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

10.     At all times relevant to this Complaint, Plaintiff and similarly situated workers were and are "employees" of Defendants and covered by the FLSA.

11.     At all times relevant, Defendants were and are "employers" covered by the FLSA.

12.     Defendants employed Plaintiff and continue to employ similarly situated workers across the United States including but not limited to California, Colorado, Florida, Massachusetts, Montana, Missouri, New Jersey, New York,

North Carolina, Ohio, and South Carolina.

13.     Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

14.     At all times pertinent to this Complaint, Defendants were an enterprise engaged in interstate commerce; had gross operating revenues in excess of $500,000.00; and employed two or more persons in interstate commerce.

## COLLECTIVE DEFINITIONS

15.     Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of herself and the following similarly situated persons:

> All current and former non-exempt employees who worked for either and/or both Defendants, were paid on a day rate basis during the past three years in the United States, and who worked more than forty (40) hours in at least one workweek (the "Day Rate Collective" or "Day Rate Collective Members").

16.     Plaintiff brings Count II of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of herself and the following similarly situated persons:

> All current and former non-exempt employees who worked for either and/or both Defendants and received additional compensation under the categories of "Excessive Tool Cargo," "Trailer Hauling," "Per Diem," "Driver," and/or "Differential Pay" during the past three years in the

United States and who worked more than forty (40) hours in at least one workweek (the "Regular Rate Collective" or "Regular Rate Collective Members").

17.     The Day Rate Collective and the Regular Rate Collective are together referred to as the "Collectives," with individual members referred to as "Collective Members" or "Installers."[1]

18.     Plaintiff reserves the right to redefine the Collectives prior to notice, and thereafter, as necessary.

## FACTS

A.     **Defendants Operate as One Entity and Are Joint Employers**

19.     Defendants operate as one entity.

20.     Defendants have overlapping officers and directors.

21.     Defendants have common managers, supervisors, and employees.

22.     Defendants utilize centralized and interrelated management departments, personnel, and operations including Human Resources, Payroll, and Training.

23.     Both Defendants operate out the same corporate headquarters located at 327 Catrell Dr. Howell, Michigan 48843-1703.

24.     Both Defendants are joint employers of the Installers as Defendants'

---

[1] The use of the term "Installers" is for ease of reference only and is not intended to in any way limit the collective definitions referenced above.

operations are interrelated and share common management.

25.     Because Defendants' operations are interrelated to such an extent, employees, like Plaintiff, believe they are the same company.

26.     Defendants maintain common policies and practices applicable to all Installers including but not limited to compensation, payroll, timekeeping, performance expectations, and training.

27.     Both Defendants jointly hired Plaintiff.

28.     Both Defendants have issued Plaintiff paystubs.

29.     Defendants jointly possessed the power to hire and fire Plaintiff and other similarly situated Installers.

30.     Defendants jointly maintained employment records for Plaintiff and other similarly situated Installers.

31.     Both Defendants jointly directed the day-to-day work of Plaintiff and other Installers.

**B.     The Work Plaintiff and Installers Performed**

32.     Defendants employ individuals to construct and install retail merchandise displays, shelving, display gondolas, remodel and renovate retail stores, and complete new store build outs.

33.     Defendants sent Plaintiff to various retail stores across the United States to complete these install projects.

34.     Plaintiff regularly worked in Tractor Supply stores completing new store build outs.

35.     Plaintiff regularly worked on a team of approximately thirteen (13) other Installers. The individuals on this team varied depending on the project.

36.     Plaintiff and other Installers are non-exempt for overtime purposes.

37.     Each project would last approximately four (4) weeks. Once complete, Defendants would assign Plaintiff to a new location.

38.     Plaintiff regularly worked five (5) to six (6) days a week.

39.     Plaintiff regularly worked nine (9) hours per day.

40.     Plaintiff worked either the night shift 8:00pm to 6:00am or the day shift 7:00am to 5:00pm.

41.     Plaintiff regularly worked forty-five (45) to fifty-two and a half (52.5) hours per week.

42.     Plaintiff observed other Installers work similar schedules that regularly exceeded forty (40) hours per week.

43.     Defendants paid Plaintiff on a day rate basis from the beginning of Plaintiff's employment until approximately November 2023.

44.     When Plaintiff's employment began, Defendants paid Plaintiff $144.56 per day.

45.     Defendants subsequently increased Plaintiff's pay to $150.00 per day.

46.     Defendants also paid other similarly situated Installers on a day rate basis until approximately November 2023.

47.     Defendants' wage rates' policy states that overtime "is calculated by the total pay for the week, less qualified exemptions, divided by the hours worked in the week to achieve an hourly rate which is multiplied by .5 to determine the OT Rate; which is then multiplied by the total overtime hours earned." *See* Exhibit B.

48.     Despite purporting to pay daily rate wages, Defendants did not pay the day rate wages without regard to the number of hours worked in the day or at the job.

49.     Defendants' wage rates policy stated that Defendants would reduce an employee's pay and instead pay the employee a rate of $10.10 per hour or the state minimum hourly wage if the employee worked less than a full scheduled shift, for reasons such as arriving late or leaving early.

50.     Pursuant to this policy, Plaintiff was denied her full day rate wages and paid a reduced hourly wage on at least one occasion when she needed to leave work early to receive medical care.

51.     Plaintiff is aware of other Installers who were also denied their full day rate wages on days in which they worked reduced hours.

52.      Additionally, Defendants pay Installers other forms of compensation in combination with the day rate.

53.    Instead of the day-rate, Defendants paid $12 per hour as travel pay when Installers traveled to job sites more than two hours away.

54.    Defendants also pay additional amounts for hauling excessive tools or cargo, hauling a trailer to the job site, driving three or more other employees to a job site, and for assuming a lead role on a team of six or more employees.

55.    Defendants also pay employees a $40 per diem for travel related assignments.

56.    Defendants, however, reduce the per diem amounts or refuse to pay per diems to employees who work fewer hours than a full scheduled shift.

57.    Pursuant to this practice, Plaintiff was denied her full per diem amount on at least one occasion when she needed to leave work early to receive medical care.

58.    Plaintiff is aware of other Installers who were also denied full per diem amounts on days in which they worked reduced hours.

**C.    Defendants Improperly Paid Plaintiff and Installers a Half-Time Overtime Rate.**

59.    Plaintiff and other similarly situated Installers regularly worked more than forty (40) hours a week.

60.    Plaintiff and other Installers have regularly worked five or more days per week and nine or more hours a day.

61.    Defendants have been aware that Plaintiff and other Installers regularly

work more than forty hours per week because Defendants set Plaintiff's and other Installers' work schedules.

62. Defendants have not properly compensated Plaintiff and other Installers for all hours worked.

63. Defendants have not paid Plaintiff and other Installers for all hours worked in excess of forty hours in a workweek and have not paid proper overtime premiums.

64. As non-exempt employees, Plaintiff and other Installers are entitled to receive overtime premiums at one and one-half times their regular rate for all hours worked over forty (40) hours in a workweek. *See* 29 U.S.C. § 207.

65. Defendants' day-rate pay policy does not comply with the requirements of 29 CFR § 778.112, which permits employers to calculate overtime premiums at a half-time rate.

66. Because Defendants' day-rate policy did not comply with the requirements of 29 CFR §778.112, Defendants were not permitted to calculate overtime premiums at a half-time rate and should have paid Plaintiff and other Installers overtime premiums equal to one and one-half times their regular rate of pay.

67. Defendants' unlawful flat-rate pay policy, in which Plaintiff and other Installers are not compensated overtime premiums of one and one-half times their

regular rate, does not comply with the requirements of the FLSA.

68.     In addition, Defendants have failed to make, keep, and preserve records with respect to Plaintiff and other Installers sufficient to determine their lawful wages, actual hours worked, and other conditions of employment as required by federal and state law. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

**D.     Defendants Did Not Pay the Proper Overtime Rate to Plaintiff and Other Installers.**

69.     The FLSA requires that the regular rate of pay for overtime purposes includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

70.     Defendants paid various forms of additional compensation to Plaintiff and other Installers, including amounts for "Excessive Tool Cargo," "Trailer Hauling," "Per Diem," "Driver," and "Differential Pay."

71.     Plaintiff received per diem payments and shift differential pay during workweeks in which Plaintiff worked over forty hours.

72.     Defendants paid per diems to Plaintiff and other Installers at a rate of $40 per day.

73.     Defendants did not require Plaintiff or other Installers to report

expenses in order to receive per diem payments.

74. Defendants did not require Plaintiff or other Installers to submit receipts for incurred expenses in order to receive per diem payments.

75. Defendants' "Wage Rates" Policy categorizes their per diem payments under "Additional *Pay Rates.*" Defendants' policy further explains that their per diem payments are "*[r]ates you may earn* in addition to your daily rate" and that employees *earn* when working travel assignments that required over eight (8) hours of travel or an overnight stay. (emphasis added).

76. Despite categorizing their per diems as *additional pay earned* by employees, Defendants failed to include their per diem payments when determining Plaintiff's and other Installers' regular rate of pay for purposes of calculating overtime premiums in violation of 29 U.S.C. § 207(e).

77. Further, Defendants maintain a policy and practice of reducing or refusing to pay per diems when employees fail to work a full scheduled shift, despite the employee otherwise working an eligible travel assignment under Defendants' policy.

78. Under Defendants' policy, any attendance or tardiness infractions will result in the loss of per diem payments for that day.

79. The amount of per diem benefits is thus not based upon actual expenses incurred, but instead is based upon, and varies with, the number of weekly hours or

shifts worked by Plaintiff and other Installers.

80.    Per diem payments that function as compensation—for example those that vary based on hours or shifts worked in a workweek and not with respect to expenses incurred by employees—are properly considered as wages and must be included in the employee's regular rate. *See e.g. Clarke v. AMN Servs., LLC*, 987 F.3d 848, 854 (9th Cir.), cert. denied, 142 S. Ct. 710, 211 L. Ed. 2d 400 (2021); *Baouch v. Werner Enters.*, 908 F.3d 1107 (8th Cir. 2018) ("Per diem payments that vary with the amount of work performed are part of the regular rate."); *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 34-35 (1st Cir. 2014) (per diem payments that are "based upon and thus var[y] with the number of hours worked" cannot be excluded from the regular rate); *Gagnon v. United Technisource Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) ("when, as here, the amount of per diem varies with the amount of hours worked, the per diem payments are part of the regular rate in their entirety").

81.    Accordingly, Defendants' per diem payments function as compensation for Plaintiff's and other Installers' work and should be included in the "regular rate."

82.    Defendants, however, fail to include these forms of compensation in the "Regular Rate" of pay for Plaintiff or other Installers when calculating the proper amount of overtime premiums owed.

83.    As a result, Defendants systematically underpay overtime premiums

owed to Plaintiff and other Installers and failed to pay all overtime compensation due at a rate of one and one-half times the regular rate of pay for all hours worked in excess of forty hours in the workweek.

84.     For example, during the pay period ending on May 18, 2024, Plaintiff worked ninety (90) hours at a rate of $16.76 per hour. She also received $560 in per diem payments. Because Defendants excluded the per diem payments from her regular rate, Defendants paid Plaintiff overtime at a rate of $25.14 per hour for ten (10) hours, resulting in her total compensation of $2,152.20. Had Defendants properly included the per diem amount in Plaintiff's regular rate, Plaintiff would have received an additional $3.11 per hour for overtime compensation and a total paycheck of $2,183.31. As a result of Defendants' failure to properly calculate Plaintiff's regular rate, Defendants underpaid Plaintiff by $31.11 on this paycheck alone.[2]

85.     The wage statements that Defendants have furnished to Plaintiff and other Installers do not accurately show the total hours worked, the number of hours worked at each hourly rate, all hourly rates in effect during the pay period, amounts paid for per diems and other additional compensation, the number of overtime hours worked, or the overtime amounts and rates paid in a workweek. Defendants

---

[2] This amount is an approximation because Defendants' paystubs do not display the total hours worked or the total amounts paid in each workweek. The true regular rate should be calculated for each individual workweek.

knowingly and intentionally adopted a uniform wage statement format that lacks this information. Defendants' inaccurate paystubs obscure critical wage information that prevents employees from discovering Defendants' wage violations.

**E.  Defendants Willfully Violated the FLSA's Overtime Provisions**

86.  Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

87.  Even though the FLSA requires overtime premium compensation for hours worked over forty hours per week, Defendants have not properly paid Plaintiff and other Installers overtime compensation for all overtime hours worked.

88.  Defendants knew, or absent their own recklessness should have known, that Plaintiff and Installers are or were entitled to such overtime premiums.

89.  Defendants knew that Plaintiff and other Installers were entitled to overtime premiums under the FLSA because Defendants classified Installers as non-exempt employees and scheduled them to work in excess of forty (40) hours a week.

90.  By failing to pay all compensation owed to Plaintiff and Installers, Defendants have acted willfully or with reckless disregard of clearly applicable FLSA provisions.

91.  Furthermore, Defendants were aware that Plaintiff and other day-rate Installers were entitled to overtime premium payments because Defendants have previously been sued and settled claims for failing to pay their day-rate employees

overtime premiums required under the FLSA. *See Joseph v. DisplayMax, Inc.*, No. 2:19-cv-12872 (E.D. Mich. Feb. 18, 2020).

92.     Defendants' continuing violations of the FLSA wage provisions following *Joseph* clearly indicate that Defendants have not made good-faith efforts to comply with the FLSA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

93.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of herself and the Collective Members as defined above.

94.     Plaintiff desires to pursue her FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

95.     Plaintiff and the Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or have worked pursuant to Defendants previously described common business and compensation practices, and, as a result of such practices, have not been properly paid overtime compensation for all hours worked over forty (40) in a workweek during the relevant time period. Resolution of this action requires inquiry into common facts, including, Defendants' common timekeeping, compensation, and payroll practices applicable to the employees at issue.

96.     The Collective Members are known to Defendants, are readily identifiable through HR and payroll records, and can easily be located through

Defendants' business and human resources records and electronic systems.

97. Defendants employ hundreds of Collective Members. These similarly situated employees, consisting of both current and former employees who have been employed by Defendants during the relevant three-year statute of limitations period, should promptly be notified in writing of this action through U.S. mail, email, and text message and/or other means, and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiff and the Day Rate Collective)**

98. All previous paragraphs are incorporated as though fully set forth herein.

99. The FLSA requires that covered non-exempt employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed. *See* 29 U.S.C. § 207.

100. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

101.   Defendants are subject to the wage requirements of the FLSA because Defendants are "employers" under 29 U.S.C. § 203(d).

102.   At all relevant times, Defendants have been "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

103.   During all relevant times, Plaintiff and Day Rate Collective Members have been covered employees entitled to the FLSA's protections. *See* 29 U.S.C. § 203(e).

104.   Plaintiff and Day Rate Collective Members are not exempt from the requirements of the FLSA per 29 C.F.R. § 541.3.

105.   Defendants, pursuant to their policies and practices, have failed and refused to pay proper overtime wages for all hours worked in excess of forty (40) in a workweek by Plaintiff and the Day Rate Collective Members during the relevant time period.

106.   Defendants have knowingly failed to properly compensate Plaintiff and the Day Rate Collective Members overtime wages for hours worked in excess of forty (40) in a workweek, in violation of 29 U.S.C. § 207.

107.   In violating the FLSA, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

108.   Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who

intentionally fail to pay an employee's wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the FLSA
### (On Behalf of Plaintiff and the Regular Rate Collective)

109.   All previous paragraphs are incorporated as though fully set forth herein.

110.   During all relevant times, Plaintiff and Regular Rate Collective Members have been covered employees entitled to the FLSA's protections. *See* 29 U.S.C. § 203(e).

111.   Plaintiff and Regular Rate Collective Members are not exempt from the requirements of the FLSA per 29 C.F.R. § 541.3.

112.   The FLSA requires that covered non-exempt employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed. *See* 29 U.S.C. § 207.

113.   The FLSA defines "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee" subject to eight enumerated statutory exclusions. 29 U.S.C. § 207(e).

114.   Defendants' per diem payments do not qualify for any of the eight

enumerated statutory exclusions under 29 U.S.C. § 207(e).

115. As alleged above, in violation of 29 U.S.C. § 207, Defendants, pursuant to their policies and practices, have failed and refused to pay proper overtime wages for all hours worked in excess of forty (40) in a workweek by Plaintiff and the Regular Rate Collective Members during the relevant time period by virtue of excluding per diem payments from the Regular Rate Collective Members' "regular rate" for purposes of calculating overtime compensation.

116. Defendants have knowingly failed to properly compensate Plaintiff and the Regular Rate Collective Members overtime wages for hours worked in excess of forty (40) in a workweek, in violation of 29 U.S.C. § 207.

117. In violating the FLSA, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

118. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee's wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

119. Plaintiff, on behalf of herself and the Regular Rate Collective Members, seeks damages in the amounts equal to unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), recovery of her attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and

proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of herself and

the Collective Members:

a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential Collective Members;

c. Back pay damages (including overtime compensation) and prejudgment interest to the fullest extent permitted under the law;

d. Liquidated damages to the fullest extent permitted under the law;

e. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

f. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims and issues.

Dated: August 7, 2024        Respectfully submitted,

By: /s/ *Adam S. Alexander*
Adam S. Alexander (P53584)
**ALEXANDER LAW FIRM**
17200 W. Ten Mile, Ste. 200
Southfield, MI 48075
Tel: (248) 246-6353
Fax: (248) 746-3793
Email: adalesq@gmail.com

Camille Fundora Rodriguez*
Michael J. Anderson*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4635
Facsimile: (215) 875-4604
crodriguez@bm.net
manderson@bm.net

Alexandra K. Piazza*
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Telephone: (215) 875-3063
apiazza@bm.net

*Counsel for Plaintiff and the Proposed Collective Members*

*\* Pro hac vice forthcoming*